1, 3, 9, 8, 3, United States v. Evans The Court of Appeals is joined by Mr. Brian Phillips. Good morning. Good morning. You may begin when you're ready. Thank you, Your Honor. May it please the Court, my name is Brian Phillips and I represent Defario Evans in this matter. In terms of an overview of my presentation this morning, given the parties' joint notices that were filed and the Court's instruction to be prepared to address the issue of mootness, as that is also jurisdictional, I think I will address mootness first and then turn to the merits of the underlying matter. The case law, both in the 11th Circuit and generally, is very clear that a matter becomes moot during an appeal when matters that occur otherwise divest the Court of the ability to provide meaningful review or meaningful relief for the defendant. And in a case like this where we're dealing with both a competency determination of incompetence and a later determination of restoration, the process is much faster than the ordinary course of appellate proceedings. And here, I think if the Court takes a moment to think about what resources or more importantly what relief the Court can afford, if the Court were to vacate the finding of restorability and remand the matter for further proceedings, and of course proceedings consistent with this Court's instruction on what the word substantial probability actually means, then Mr. Evans would not be divested of a meaningful review. With respect to the fact pattern we find ourselves in, the Evans case from the 8th Circuit, which is 690 Fed 3rd 940, stands for the proposition that when, I think in Evans, the other Evans court found during dependency of the interlocutory appeal, the defendant to be not competent. And the 8th Circuit in that case reasoned, I think correctly, that that did not in fact moot the appeal. And it starts the analysis of the differentiation between the substantive proceeding on the merits and the competency component that travels independent of the substantive criminal case. To like effect from the 1st Circuit is United States v. Mahoney 717 Fed 3rd 297, and it on the similar fact pattern of an interlocutory appeal, wherein the defendant was later found not competent, again found that the matter was not moot and proceeded accordingly. Is there a difference though between a case where the defendant is found not competent and presumably could later be found competent, and this case where he was found competent? I think there is, Your Honor. And the next case I was going to address, I think, addresses precisely that fact pattern. And that's the, if I pronounce it correctly, the Bojagrain case from the 10th Circuit. It's at 155 Fed 3rd 1181. And in Bojagrain, during the interlocutory appeal, the defense sought and received a limited remand for the purpose of determining the defendant's competency, and in that case, going so far as the entry of a plea to the underlying criminal charges. And there, Bojagrain addresses not necessarily the substantive issue of mootness, but rather drives its decision on the exception to mootness, which is the capable of repetition yet evading review standard. And it goes through that analysis, I think, very clearly that competency proceedings, whether either competency or restorability or non, having not been restored or relapsed into incompetence, is not mooted by the underlying disposition of the criminal case on the merits. And I think on the issue of mootness, that answers the Court's question here, because I think if the Court is of a mind to not find them, to find the matter moot, the exception would apply. And I realize the 11th Circuit precedent is very clear that that is an exceptional circumstance and an outstandingly challenging thing for a defendant to bring up and actually win on. Well, so what, tell me the practical results. Say we agree with everything you have said, and we remand it to the district court, what's the district court going to do? Is the district court going to say, he's competent now, move on? Your Honor, I don't know the answer to that. But I think the better approach is to think the court, the district court, would have to take this Court's instructions on what substantial probability means. And if that is something other than the standard applied at the trial level here, yes, the district court would have to redetermine whether or not he was restorable. The record, I think, reflects clearly Mr. Evans was, by agreement of both the government and the defense, not competent at the inception of the proceeding. He was then sent off and determined to be later restorable, and as the Court knows from our supplemental notices, has been found now competent. But if we say to the district court, we think you got the definition of substantial probability wrong, and we send it back to the district court, the district court, couldn't the district court say, he's competent now, so I don't need to wrestle with the definition of substantial probability. Let's just proceed? Your Honor— And so if that's true, how is meaningful relief available from this court? Because the consequences that flow from a different outcome, a finding of non-restorability, of course that sends him down the path of the dangerousness hearing and that sort of outcome, which is a universally different set of outcomes than trial on the merits. Also, I think it's of note to remember that my client's mental challenges are not ones that are pharmacologically fixable, if you will. It's brain damage, physical brain and brain stem injury here. So his competence is and will remain an ongoing issue in the proceeding below, whether the court rules in our favor or not. So I think he does get meaningful review because if he is not restorable, if the district court, in looking at the record again, determines that the restorability isn't established by the government by whatever standard this court announces, then he would be found not competent and he would have to go down the restorability, the dangerousness path. Are you going to challenge, if we were to do everything I just said, would you be challenging below the determination that he is now competent? Your Honor, I don't know the answer to that question because I just recently had Mr. Evans become competent and able to assist me in his defense. I think at the end of the day, his competence is going to be a continual process of trying to determine whether or not he is, at any one moment in time, competent. So I don't know the answer to that question, Your Honor. While you mention that, see, I see this case on its own set of facts, which is here we've not had a competency, you just said, he was found competent. And I noticed that you didn't object, the magistrate judge made findings of that effect, right? That's correct. And you didn't object to the district court. On the record issue, that's correct, but we did appeal the legal issue of what does substantial probability mean, yes. Well, that's this appeal. I'm talking about what's going on in the district court right now. There was a hearing and the magistrate judge found your client is now currently competent. He has been restored to competency. That's correct. And you did not file any objections to the district court with regard to that? We did not, Your Honor. That's correct. Okay. So, think about this case for us, given that set of circumstances, I don't see how there's any meaningful relief to be given here with regard to whether he can be restored, given he has been restored, and you didn't object, at least right now, that he's been restored. So, it seems to make it moot because of those developments. And I appreciate the court's analysis there because that one factual development changed the trajectory of our approach to the matter as well. The challenge then, I think, Your Honor, would be seeing if the matter fits within the ambit of capable of repetition yet evading review. Because at the end of the day, the process for competency determination and restorability determination is much quicker, of course, than the appellate proceeding. And I think that would take us into the ambit of the exception. And so, the district court could, in fact, rule and provide the correct standard for this circuit with respect to the restorability issue, substantial probability. It just seems inherently contradictory for us to be talking about whether he's substantially remanding, to be, whether he can be substantially returned to competency when everybody's found out he has already been restored to competency and there's no objection now. What may happen at the end of the case, I don't know what may happen. You'll have a direct appeal. You'll bring out whatever you want. I consider that as well, Your Honor, and I think— Particularly because if he becomes incompetent, then whatever happens. I mean, there's so many different ways this can play out. But right now, at this point in time, for us to rule when he's been found competent and there's been no appeal from that or no objection to it, it seems like we're now kind of boxed in. And Your Honor, I think that I appreciate the court's perspective— Or no meaningful relief, I guess I should say. I appreciate that. The challenge for me, I think, is a little different. To my mind, as Mr. Evans is competent, that competency determination exists as of a single point in time. As the court knows from the record, Mr. Evans has been found incompetent, I think, something approaching 10 times in his lifetime. It is highly probable that he will have the same problem, competence or not, going forward, especially when he's outside the close quarters of the Federal Correctional Center at Butner, which is where, of course, he was reeducated. You understand there's nothing in the record right now that suggests to us this competency finding did not suggest this is a limited competency finding that we need to check back, you know, every month to see if he is, in fact, still competent. So have you effectively brought up the exception for the capable of repetition evading review? How do we know that? I cannot give the court the citation off the cuff, but if I recall correctly, the testimony of Dr. Dubois at the underlying hearing indicated he is competent presently. And I think also our supplemental documents we provided to the court, the notices, also show in the process that he has been restored as of this time. Right, but what is in the record that suggests that might disappear? You're saying you're worried because of what has happened in the past, and I fully acknowledge that's what you're saying here today. But what is in the record medically that suggests this is fleeting? The reports that were evidenced at the hearing on the competency restoration issue, as well as Dr. Danziger's report, and I think even Dr. Otto's and Dr. Dubois' report show that the restoration has occurred as of this time. And just as one can be restored, one can also sidestep that as well and become incompetent once again. But that's the nature of a competency determination, right? It's always as of this time. Always. Absolutely. And then, of course, the party's obligation is to make sure the defendant is competent at all times in the proceeding. I see that my time has expired. I will, oh, I'm sorry. You talked about prior time. I want to make sure the record is correct. This is the first time he's ever been in federal court. That's correct, Your Honor. And this is the first time we've had a competency finding under the federal standard, the competency finding under the federal standard. That's affirmative, Your Honor. Yes. Okay. Thank you. So it's not like it's a whole lot of history, but with regard to federal court, fortunately for him. That's correct. This is his first visit to the federal correctional process. Thank you. Thank you, Your Honor. We'll give you your full five minutes for rebuttal. Mr. Grandy. May it please the Court, Todd Grandy appearing on behalf of the United States. Your Honors, I want to, since we started with mootness and since that is a threshold jurisdictional issue, that's where I'd like to start. There is simply no meaningful relief that this Court could give Mr. Evans at this juncture. He has been found competent or determined to be competent by the district court. The parties agree with that assessment that's reported in the magistrate judge's most recent report and recommendation document 133 at 3. So there's absolutely no dispute from the party's perspective that Mr. Evans is currently competent to stand trial. That being the case, any decision by this Court addressing the merits of the interlocutory appeal would be an impermissible advisory opinion that this Court should not issue. Instead, this Court should dismiss this appeal for lack of jurisdiction based on mootness. What is the federal standard for competency? Do you know it? You know, Your Honor, I don't offhand. I'm sorry. That's all right. Never mind. I'm sorry. All these other proceedings have been in state court because it's mainly been in state court. That's correct. And as a practical matter, my understanding of the record is that in those cases, the charges were ultimately dismissed. So this seems to be they didn't go anywhere. They didn't go anywhere because the state authorities dismissed charges, you know, based on concerns about his competency. Yeah. But right now, the parties agree that he is competent.  That simply doesn't apply here. The only way this issue could come up again from Mr. Evans' perspective would be, one, if he is acquitted and then commits another crime, or two, is convicted at trial, serves whatever sentence the district court imposes, and then commits another crime at that point. So the capable of repetition in evading review is a narrow exception, applies in only exceptional circumstances. The best case I have for that in response to this Court's memorandum does, I guess last week, is Al-Najjar v. Ashcroft, located at 273 Fed 3rd, 1336, and that case succinctly lays out the standard for mootness and reiterates that any decision on the merits of a moot case would be a permissible advisory opinion and characterizing the issue of mootness as a threshold jurisdictional issue that must be resolved at the outset of any case where it's presented. Do you have any cases in this context regarding mootness? No. No. Al-Najjar, no. I do not, Your Honor. I think that's an immigration case. It is. It is, Your Honor. I don't know what that has to do. But anyway. I actually thought about your point that you almost need another federal crime to get this issue back here. Right. And I think in that circumstance, in that Al-Najjar case, and I understand that it was in a different context, the Court, this Court noted the remote possibility that an event might recur is not enough to overcome mootness and even a likely recurrence is insufficient if there would be ample opportunity for review at that time. So I think the only way this issue could recur would be entirely speculative, and in any event, it would not evade review at that time. There would be ample opportunity to review the issue if and when it is presented again. So we do believe that the case is entirely moot and— Actually, on direct appeal, if he's convicted of the crime, are you going to be litigating whether he is or is not competent to proceed? Because I've got an expert saying he's not, and you all have an expert saying he is. Although on that point, Your Honor, the magistrate judge did find the testimony of the United States expert. He credited that testimony that's at Doc— I'm aware of that. Okay. Okay. So what does that have to do with it? Well, because there's a finding by the magistrate judge that was never challenged in the District Court by Mr. Evans. So as a result, he's now bound by that credibility finding. Well, but circumstances can change, and he's kind of agreed, he's being professional about it. I really can't say he isn't right now, but I don't know what he's going to be like nine days from now, because at Butner, they go through the legal process, and he may forget half that. And what I was saying is, so if that happens, then he'll raise a competency claim, say he can't be restored to competency, don't send him back there again. Yes. I mean, it just seems like that issue is going to bubble up if he becomes in—it's going to bubble up in that case, and you're going to be ultimately litigating competency potentially if it happens again in this case. But certainly, as far as what's just happened, yeah, he didn't object to the magistrate judge's finding, so that's kind of at this moment in time, but that's really all it is. Yes, Your Honor. I mean, I do recognize that certainly circumstances can change, and so— So we need to make sure in our order that if we dismiss him, you know, we haven't reached a merit so that if he becomes incompetent and the District Court's got to decide again, do I just send him back to Butner, or do I—what do I do? It's going to bubble up again, and you could have a direct appeal from that, which seems like the best vehicle here. Your Honor, I would agree, and if and when that does occur, there would be ample opportunity to litigate that issue at that time. Okay. So it would not— So you've said that for the record, so now I talk—that's one reason I was doing it, so that this doesn't prejudice if he becomes incompetent later on. Based on— If there's some new development. Right. Right. Okay. I think we have it. Okay. Thank you, Your Honor. Do y'all want to— I don't have any further questions. Thank you. Mr. Phillips? Most briefly, Your Honor, the Al-Najjar case is a matter of—or not extradition, of citizenship and deportation. In that case, the Homeland Security folks actually sent Mr. Al-Najjar back to Egypt during the pendency of his interlocutory appeal, and I think the opinion there shows that there's no way the court could then, with Mr. Al-Najjar in Egypt, or at least not inside the United States, could afford him any meaningful relief. In response to Judge Hull's question, what is the standard, the Florida standard and the federal standard are shockingly similar. The defendant must be able to fully understand and appreciate the consequences of his actions and the nature of the proceedings he's facing, and in this case, most materially, he must be able to meaningfully assist his counsel in his own defense. Did Florida—I'm just curious how it works. Did they send him somewhere to try to get restored, or do they just do what he says kind of generally is an issue here, and it's a minimum charge, and they just get rid of it? The state of Florida's resources are lesser than those of the United States. That's what I'm trying to say. Absolutely. So most of those cases have all been dismissed. He's got issues. He's got a lack of competency, and they say goodbye. He's served already 60—he's probably been in jail in a lot of those cases. It doesn't matter. You don't have to speculate. No, very well. No, Your Honor, that, at the end of the process, yes, he has not undergone any prior rehabilitative efforts on anyone's behalf. And thank you for your candor about that. So state court's not going to send him somewhere to get rehabilitated. No. In fact, one of our concerns is if he ends up in a— That doesn't happen. Exactly. Our concern is if he ends up in a dangerousness hearing, the state of Florida may not take him once the United States is finished with him. But that's perhaps for another day. Right. If no other questions from the panel, thank you for your time this morning. Thank you, Mr. Phillips, and I note that you were court-appointed, and the court thanks you for your service. Thank you. Our final case.